

**RECEIVED**

MAY 2 0 2008 *MB*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MAY 2 0 2008**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Javier Bailey

---

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Robert Janiga
Robert Morrison
et. al.

---
---
---

(Enter above the full name of ALL
defendants in this action. <u>Do not</u>
use "et al.")

**08CV2914**
**JUDGE CASTILLO**
**MAG.JUDGE VALDEZ**

Case _____
(To be supplied by the <u>Clerk of this Court</u>)

**CHECK ONE ONLY:**

✓     **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____     **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____     **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.   Plaintiff(s):**

A.   Name:  JAVIER BAILEY

B.   List all aliases:  - NONE -

C.   Prisoner identification number:  K52482

D.   Place of present confinement:  LAWRENCE CORRECTIONAL CENTER

E.   Address:  R.R. #2, P.O. Box 31, SUMNER IL. 62466

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

**II.   Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.   Defendant:  ROBERT JANIGA

Title:  CALUMET CITY POLICE OFFICER STAR No. 131

Place of Employment:  1200 Pulaski Road, Calumet City Il. 60409

B.   Defendant:  ROBERT MORRISON

Title:  CALUMET CITY POLICE OFFICER STAR NO. 129

Place of Employment:  1200 Pulaski Road, Calumet City Il. 60409

C.   Defendant:  _____

Title:  _____

Place of Employment:  _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

**III.    Exhaustion of Administrative Remedies**

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.    Is there a grievance procedure available at your institution?    N/A

YES ( )  NO ( )   If there is no grievance procedure, skip to F.

B.    Have you filed a grievance concerning the facts in this complaint?

YES ( )  NO ( )    N/A

C.    If your answer is **YES**:

1.    What steps did you take?

N/A

2.    What was the result?

N/A

3.    If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.)

N/A

D.    If your answer is **NO**, explain why not:

N/A

Revised:  7/20/05

E.    Is the grievance procedure now completed?   YES ( ) NO ( )   N/A

F.    If there is no grievance procedure in the institution, did you complain to authorities?   YES ( ) NO ( )   N/A

G.    If your answer is **YES**:

1.    What steps did you take?

_N/A_

2.    What was the result?

_N/A_

H.    If your answer is **NO**, explain why not:

_N/A_

4

Revised:  7/20/05

IV.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):**

A.    Name of case and docket number: DeMar-Bailey V. State of Illinois et al. 07-C-1760

B.    Approximate date of filing lawsuit: March 2007

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A DeMar-Bailey

D.    List all defendants: DeMar-Bailey State of Illinois, et al.

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District of Illinois

F.    Name of judge to whom case was assigned: Gettleman, Judge

G.    Basic claim made: Various Violations of Constitutional Rights

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed Without Prejudice

I.    Approximate date of disposition: May 2007

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Bailey V. Janica, et.al.  07-C-4968

September 2007

Bailey

Robert Janica, Robert Morrison, et.al.

Northern District of Illinois

John W. Darrah, Judge presiding

Filing Fraudulent Documents Transfering into a Conviction

Strike 2 - Found Frivolous

November 2007

A. DeMar-Bailey V. Ryker  07-C-1759

B. March 2007

C. ~~N/A~~ DeMar-Bailey

D. ~~DeMar-Bailey~~ Kenneth Bartley and Lee Ryker

E. Northern District of Illinois

F. Conlon, Judge

G. Habeas Petition § 2254; Void Conviction

H. ~~Pending~~ Dismissed without prejudice

I. ~~Pending~~ Dismissed without prejudice, July 2007

5A.

A. DeMar-Bailey VS L.G.B. Communications 05-C-4598

B. August 2005

C. DeMar-Bailey

D. Theresa Tucker and Calvin Lockhart

E. Northern District of Illinois

F. Gottschall, Judge

G. Abridged Contracts

H. Dismissed / with Strike imposed

I. November 2005

5B.

A. DeMar-Bailey V. People of the State of Illinois et al.
05-C-4298

B. August 2005

C. DeMar-Bailey

D. People of the State of Illinois et al.

E. Northern District of Illinois

F. Conlon, Judge

G. Constitutional violations

H. Dismissed without prejudice

I. November 2005

5C.

A. Bailey V. Micheal Sheahan 02-C-7226

B. November 2002

C. Bailey

D. Micheal Sheahan et al.

E. Northern District of Illinois

F. Plunkett, Judge

G. Prison/Jail Conditions

H. Settlement

I. May 2004

A. Bailey V. Sheahan   02-C-2232

B. May 2002

C. Bailey

D. Robert Janiga, Robert Morrison, et.al.

E. Northern District of Illinois

F. Kennelly, Judge presiding

G. Constitutional violation of 48 hours

H. Settlement

I. May 2003

## V.    Statement of Claim:

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Under indictment No. 00-CR-28590, the Plaintiff Javier Bailey, was arrested and convicted, authorized by and through, the violation of his constitutional right to be presented before a Judicial Officer within 48 hours after initial arrest. The Plaintiff previously brought a similar claim to the United States District Court (7th Cir.) under case No. 02-CV-2232, but even after this settlement (and Pro-Se motion submitted before the Illinois Circuit Courts), the Plaintiff was still continuously held in violation of the 48 hour presentment rule, which is a constitutional guarantee, but the Illinois State Circuit Courts have ignored the Supreme Courts decision to uphold [McLaughlin and Gerstein] read together.... Under incompetent advisement, the Plaintiff was advised to, "take whatever you can," as a settlement to resolve the District Court case (No. 02-CV-2232), because Illinois has never considered the 48 hour presentment rule as a question towards the legality of "Illegal Seziure". The Plaintiff ▬ submits this action, because, the previous settlement contract has been breached, ▬ along with U.S. and Illinois Constitutional provisions, supported by other existing violations. It is for this reason, via, the recent

6

DECISION FOUND IN LOPEZ VS. CITY OF CHICAGO (CASE NO. 05-1877) (7th CIR. 2004), AND BECAUSE OF THE PRO-SE MOTION FILED BY THE PLAINTIFF ~~WHERE ONLY THE~~ "VOLUNTARINESS OF CONFESSION" ~~COULD BE~~ "CHALLENGED", THAT HE NOW ~~CHALLENGES~~ "SUBJECT MATTER JURISDICTION", AND OTHER CONTINUOUS DAMAGES THAT NOW EXISTS, BOTH PUNITIVE AND COMPENSATORY. THE CALUMET CITY POLICE DEPARTMENT OFFICERS" ROBERT JANIGA, ROBERT MORRISON, et. al., FAILED TO PRESENT THE PLAINTIFF BEFORE A JUDICIAL OFFICER UNTIL AFTER 78 HOURS (SEVENTY-EIGHT) OF INITIAL ARREST. THIS DELAY WAS MOTIVATED AGAINST THE PLAINTIFF BY ILL WILL, DELAY FOR DELAYS SAKE, AND DELAY FOR THE PURPOSES OF GATHERING ADDITIONAL INFORMATION TO JUSTIFY ARREST. THIS ARREST IS IN DIRECT CONNECTION OF AN UN-NECESSARY UN-REASONABLE DELAY, AGAINST THE PLAINTIFF, THAT, WITHOUT PROPER AUTHORITY, RECEIVED SUBJECT MATTER JURISDICTION IN THE CIRCUIT COURTS OF THE SIXTH JUDICIAL DISTRICT OF COOK COUNTY, ILLINOIS, WHICH IS IN DIRECT CONNECTION OF THE PLAINTIFFS CURRENT CONVICTION AND INCARCERATION, WHICH HE RECEIVED AGAINST HIS PERSON AND REPUTATION IN 2005. THIS VIOLATION IS CONTINUOUS, CURRENT, AND UNEQUIVOCAL; THE [ABSENTS] OF THE CIRCUIT COURTS OBJECTIVE DECISION TO PROPERLY CHALLENGE THE 48 HOUR PRESENTMENT RULE OF (THE 78 HOUR + DELAY) SUBJECT MATTER JURISDICTION, IN INDICTMENT NO. 00-CR-28590, AND THE CURRENT CONVICTION AND VIOLATION (S) "OF SUCH ABSENTS", PERMITS WILLFUL, HABITUAL, AND MALICIOUS, VIOLATIONS AGAINST THE

Revised 5/2007

(Plaintiffs, Javier Baileys') 4th, 5th, 6th, 8th and 14th, Article Amendment (Rights) of the United States Constitution, Along with; Article I & 2, 6th, 7th, 8th, 12th, 20th, and 24th, of the Illinois Constitution of 1970; and, 725 & 5/109(a) of the Illinois Compiled Statutes, Guaranteed to (All Accused) ████████████████████████████████ the Plaintiff, Javier Bailey, who has been subsequently and consequently convicted therefrom. (See Exhibit attached.) Under indictment No. 00-CR-28590, the Plaintiff, Javier Bailey, Appealed his conviction in the Circuit Courts (6th Judicial District of Cook County, Markham, Illinois), via post-conviction petition. The Plaintiff has raised many issues, including, but not limited to, Reconsideration for Violation of 48 Hour presentment rule. The Plaintiff was denied any relief from his post-conviction petition submitted, and his illegitimate conviction was re-affirmed before Judge Thomas Panichi, 02 November 2007.)

Revised 5/2007

EXHIBIT A

```
 1   STATE OF ILLINOIS      )
                            )    SS:
 2   COUNTY OF COOK         )

 3            IN THE CIRCUIT COURT OF COOK COUNTY
              COUNTY DEPARTMENT-CRIMINAL DIVISION
 4
     THE PEOPLE OF THE      )
 5   STATE OF ILLINOIS      )
                            )
 6            -vs-          )    No. 00-CR-28590
                            )
 7   JAVIER BAILEY          )

 8                     REPORT OF PROCEEDINGS

 9                     BE IT REMEMBERED, that on the

10   17th day of October, A.D., 2002, this

11   matter came on for hearing before the

12   Honorable EDWIN A. GAUSSELIN, Judge of said

13   Court.

14
          APPEARANCES:
15
               HON. RICHARD DEVINE,
16              State's Attorney of Cook County, By

17             MS. MARY JO MURTAUGH AND
               MR. DAVID SABATINI,
18               Assistant State's Attorneys,
                 on behalf of the People;
19
               MR. LOUIS CAPRIO,
20               Assistant Public Defender,
                 on behalf of the Defendant.
21

22    No. 084-001181

23

24
```

1          THE COURT:  Mr. Caprio, it's very plain

2     what he said.

3                    He instructed her on the

4     procedure for lineups.

5          MR. CAPRIO:  Q And what was the

6     procedure that you instructed her on?

7          MS. MURTAUGH:  Objection.  No motion

8     pending.

9          THE COURT:  Sustained.

10         MR. CAPRIO:  Okay.

11         Q.   After Ms. Bailey viewed the

12    lineup, did you then speak to Mr. Bailey --

13    or after Ms. Granger viewed the lineup, did

14    you then speak to Mr. Bailey?

15         A.   Yes.

16         Q.   Okay.

17                    And do you remember where

18    that was and who was present?

19         A.   Yes.

20         Q.   Where was it and who was present,

21    sir?

22         A.   It was in the Investigations

23    Division in our office at the Calumet City

24    Police Department and myself and Detective

1    Morrison

2        Q.    And, again, this occurred, what,

3    November 13th, is that correct?

4        A.    Yes.

5        Q.    And at this time when you were

6    speaking to Mr. Bailey, you knew that he

7    had been identified by Ms. Granger, is that

8    correct?

9        A.    Yes.

10       Q.    Okay.

11             When you spoke to Mr. Bailey,

12   did you tell him that Ms. Granger

13   identified him?

14       MS. MURTAUGH:   Objection.

15       THE COURT:   You can tell him.   Do you

16   remember?

17       THE WITNESS:   I don't recall.

18       MR. CAPRIO:   Q Okay.

19             Well, in any event, you

20   spoke to Mr. Bailey and you executed the

21   statement from him, is that correct?

22       A.    Yes.

23       Q.    Okay.

24             And was that the last

1     involvement that you had in this case?

2          A.   No.

3          Q.   When is the next involvement that

4     you had in this case?

5          A.   There was still the auto theft

6     portion of it at hand, so I had talked to

7     him once again at some later date

8     pertaining to the car.

9          Q.   Okay.

10         THE COURT:  What date was that?

11         MR. CAPRIO:  Yeah, what date?

12         THE WITNESS:  I believe the 15th.

13         MR. CAPRIO:  Q All right.

14              And this was what, two days

15    after the lineup was conducted, is that

16    correct?

17         A.   Yes.

18         Q.   Okay.

19              And do you remember when it

20    was and who was present when you talked to

21    Mr. Bailey about this stolen, or about,

22    quite possibly, the stolen automobile?

23         A.   I don't recall.

24         Q.   Okay.

```
 1                    But you do recall, though, it

 2   was somewhere on the 15th, is that correct?

 3        A.   I believe that's the date, yes.

 4        Q.   Okay.

 5                    Did you have any other

 6   involvement in this case after that?

 7        A.   No.

 8        Q.   Did you take Mr. Bailey into the

 9   Markham Courthouse for a bond hearing of

10   any type?

11        THE COURT:   You asked that before.

12                    You asked him if he brought

13   him over here, he said no.

14        MR. CAPRIO:   Q Do you know when Mr.

15   Bailey was taken to the Markham Courthouse

16   for a bond hearing?

17        A.   I don't remember.

18        Q.   Okay.

19                    He wasn't taken on the 13th

20   of November, was he?

21        A.   No.

22        Q.   He wasn't taken on the 14th, was

23   he?

24        A.   I really don't remember what da he
```

1    got there.

2        Q.    It was not on the 15th of November

3    because I were talking to him on the 15th

4    about quite possibly a stolen automobile,

5    is that correct?

6        A.    Yes.

7        Q.    And you know what, you knew on the

8    13th of November, when he was bought to the

9    police station, that quite possibly the car

10   that he was involved in could have been a

11   stolen auto, isn't that correct?

12       A.    Yes.

13       Q.    Because that is what Officer Growl

14   talked to you about, wasn't it?

15       A.    Yes.

16       Q.    You waited until the 15th of

17   November, more than two days after he was

18   arrested, to make any inquiries in relation

19   to that car that was he was in, didn't you?

20       MS. MURTAUGH:  Objection, Judge.

21       THE COURT:  Sustained.

22       MR. CAPRIO:  Judge, it goes right to

23   the -- it goes to the issue that --

24       THE COURT:  How many times does he have

1    to say that he talked to him on the 15th?

2         MR. CAPRIO:  My question was --

3         THE COURT:  There wasn't a question.

4         MR. CAPRIO:  Okay.

5         Q.  You waited until the 15th of

6    November to first make the first, to

7    determine whether or not that car was, in

8    fact, stolen didn't you?

9         A.  No.

10             I already new the car was

11   stolen.

12        Q.  And why did you call on the 15th

13   of November?  Who did you call on the 15th

14   of November to determine whether or not the

15   car was stolen?

16        MS. MURTAUGH:  Objection.

17        THE COURT:  Sustained.

18        MR. CAPRIO:  Q Officer, the car, you

19   learned -- Okay.

20             What did you learn on the

21   15th in relation to the stolen auto?

22        A.  I asked him what he knew about the

23   stolen auto.

24        Q.  From the time that Mr. Bailey was

1      taken to the police station, which was the

2      morning, early morning hours of November

3      13th, to November 15th, did you ask him any

4      questions in relation to what he knew about

5      the car that he was in?

6          A.    I don't recall.

7          Q.    All right.

8                So, you don't remember

9      whether you spoke to him on the 14th and

10     talked to him about the stolen car, is that

11     correct?

12         A.    That is correct.

13         Q.    Okay.

14               Now, after you spoke to him

15     on the 15th in relation to the stolen

16     automobile, did you have any further

17     involvement in this case?

18         A.    No.

19         Q.    Okay.

20               So you don't know what

21     happened to Mr. Bailey after that, is that

22     correct?

23         A.    That is correct.

24         MR. CAPRIO:   Okay.   I have nothing

1     further.

2                    REDIRECT EXAMINATION

3                    BY

4                    MS. MURTAUGH:

5          Q.    Detective Janiga, you were aware

6     of the initial report that was made in

7     conjunction with Bobby Granger's incident

8     that happened to Bobby Granger on August

9     4th, is that correct?

10                   You were aware of the initial

11    investigation.  You were not the primary

12    detective involved in the case initially,

13    is that correct?

14         A.    That is correct.

15         Q.    That was Detective Devaney who was

16    the primary detective?

17         A.    That is correct.

18         Q.    And you got involved in this

19    investigation subsequent to when it

20    happened, correct?

21         A.    That is correct.

22         Q.    And the reason why you didn't

23    speak to this defendant about the car --

24         MR. CAPRIO:  I will object to the form

1   of the question.

2   THE COURT:  Hold on just a minute now.

3   Watch the form of your

4   question.

5   MS. MURTAUGH:  Q What was the reason --

6   MR. CAPRIO:  That is what I am going to

7   object to, the form of the question.

8   THE COURT:  Well, let's hear the

9   question.

10   I mean, I know what you were

11   talking about before, but it sounds proper

12   to me now.

13   MS. MURTAUGH:  Q What was the reason

14   that you didn't talk to Javier Bailey about

15   the stolen car case on the 13th and the

16   14th of November?

17   A.   My primary focus at that point was

18   the sexual assault from August 4th.

19   MS. MURTAUGH:  That is all.  Thank you.

20   MR. CAPRIO:  All right now.  Wait a

21   minute, wait a minute.

22   THE COURT:  You can wait as long as you

23   want.

24   MR. CAPRIO:  I have a couple questions,

1    Judge.

2        THE COURT:  Let me know when you are

3    ready to start.

4        MR. CAPRIO:  I have a couple.

5            RECROSS EXAMINATION

6            BY

7            MR. CAPRIO:

8        Q.    You knew that afternoon, November

9    13th, that he was a prime suspect in an

10   alleged sexual incident involving Ms.

11   Granger, is that correct?

12       A.    Yes.

13       Q.    Because you were there when she

14   picked him out of an alleged lineup,

15   correct?

16       A.    Yes.

17       Q.    Okay.

18            So, you let the rest of

19   November 13th go by, you let all of

20   November 14th go by and you finally decide,

21   November 15th, more than two days after he

22   was identified by Ms. Granger, and then you

23   go talk to him about the car that he was

24   in?

S-102

1                      Is that what your testimony

2       is?

3           A.    Yes.

4           MR. CAPRIO:  Okay.  I have nothing

5       further.  Thank you.

6                FURTHER REDIRECT EXAMINATION

7                          BY

8                   MS. MURTAUGH:

9           Q.    Detective Janiga, you were aware

10      that there was a sex investigation --

11          MR. CAPRIO:  You know, I'm going to

12      object.  That is beyond the scope, Judge,

13      with regards to any other investigation.

14          THE COURT:  Will be the sustained.

15                      Move on.

16          MS. MURTAUGH:  Q You were working in

17      conjunction with Detective Morrison on a

18      sexual assault as well?

19          MR. CAPRIO:  Objection, your Honor.

20      That is beyond the scope.

21          THE COURT:  Overruled.

22          THE WITNESS:  Yes.

23          MS. MURTAUGH:  And that was different

24      than Bobby Granger's case, is that correct?

                        S-103

1          A.    That is correct.

2          THE COURT:  Okay.

3                    Mr. Caprio?

4          MR. CAPRIO:  I have no questions,

5    Judge.

6                    Wait.

7              FURTHER RECROSS EXAMINATION

8                    BY

9                    MR. CAPRIO:

10         Q.    How many other rape cases were you

11   working on?

12         A.    I'm sorry, what's that?

13         Q.    How many other rape cases were you

14   working on?

15         A.    During that period?

16         Q.    Yes.

17         A.    One other?

18         MR. CAPRIO:  Okay.  I have nothing

19   further.

20         MS. MURTAUGH:  I have no further

21   questions.

22         THE COURT:  You can step down.  Thank

23   you.

24                    (Whereupon, the witness was

1    conducted on November 13th, thesame date of

2    this initial arrest on an unrelated matter.

3              He was given his rights each

4    and every time he was spoken to by the

5    detectives and by the Assistant State's

6    Attorneys.

7              He has shown no prejudice in

8    explaining why the defendant was held and

9    he was given his bond hearing on November

10   16th and, therefore, we ask you to deny the

11   motion.

12        THE COURT:  Mr. Caprio.

13             CLOSING ARGUMENT

14             BY

15             MR. CAPRIO:

16        MR. CAPRIO:  Judge, the issue is not

17   his arrest, because we have already heard

18   that and you determined that at that time

19   there was probable cause to pick up and

20   arrest Mr. Bailey on the 13th of November.

21             The issue that Mr. Bailey

22   alleges is that it's his delay at the

23   police station before he was brought before

24   a magistrate is unreasonable.

1                         We know two uncontroverted

2       facts.

3                         One, he's arrested November

4       13th.

5                         Two, he's brought for his

6       bond hearing November 16th.

7                         Approximately 78 hours, 77,

8       78 hours after he is arrested.

9                         Our contention is, Judge,

10      they had all the information that they

11      needed on the 13th of November and, so, the

12      State has shown.

13                        He was ID'd in a lineup,

14      there was statements.   Taken.

15                        There is no reason to hold

16      this man until the 16th of November.

17                        The reason, the length of

18      the delay is important because it points to

19      the coercive nature of the arrest

20      situation, Judge.

21                        He is there all by himself

22      and we feel that the that that amount of

23      time was unreasonable by statute.

24          MS. MURTRAUGH:   Judge, I just forgot to

1    mention --

2        MR. CAPRIO:  You don't get to argue

3    again.

4        MS. MURTAUGH:  In my case that I rely.

5    If I may, People versus Edward Smith, at

6    222 Il. Ap. 3rd, 473, which the People

7    would submit is exactly on point in this

8    matter.

9        THE COURT:  Mr. Caprio.

10       MR. CAPRIO:  I have nothing else.

11       THE COURT:  There is, apparently, no

12    dispute as far as the facts are concerned.

13            The issue is, was he given a

14    time or was he before a judge in a timely

15    manner and I find that he was.

16            The investigation was

17    ongoing.  It began on the 13th and

18    continued well through and into, almost

19    into the 15th with the taking of the

20    statement regarding the secondary -- I

21    shouldn't say secondary, but the second

22    criminal sexual assault of the complainant,

23    Wiseman.

24            So, with the investigation

1    being completed roughly midnight of the

2    15th and him being there in Markham on the

3    16th for a morning bond hearing, I find

4    that he was brought there in a timely

5    fashion.

6         MR. CAPRIO:  Judge, I must interrupt.

7              It was midnight of the 13th

8    going into the early morning hours of the

9    14th, not the 15th, Judge.

10             You indicated that it was

11   the 15th and that's not accurate.

12        THE COURT:  Well, I tought Ms.

13   Delehanty said that she arrived there on on

14   November the 14th at 7:00 o'clock in the

15   morning, or seven o'clock in the evening.

16        MR. CAPRIO:  Yes.

17        THE COURT:  And that by the time that

18   she completed her statement, it was 11:45

19   that evening, that night.

20        MR. CAPRIO:  Okay.  I stand corrected.

21   I apologize.

22        THE COURT:  And Mr. Sullivan was

23   actually, didn't talk to him until November

24   14th at 12:30 in the morning.

1          MR. CAPRIO:  Right.

2          THE COURT:  That will be the order.

3                     Leave to withdraw is

4      granted.

5          MR. CAPRIO:  Motion denied, right?

6          MS. MURTAUGH:  Judge, the only thing

7      that I have outstanding in the case that we

8      elected on is the victim's medical records.

9                     I can tender them today.

10                    I submit this case be set

11     for trial.

12         THE COURT:  Say that again, please.

13         MS. MURTAUGH:  I submit that this case

14     should be set for trial.

15         THE COURT:  Well that part I got, but

16     what did you say before that?

17         MS. MURTAUGH:  Since the medical

18     records are the only thing outstanding for

19     Mr. Caprio, I have those to tender today.

20         MR. CAPRIO:  The only proviso that I

21     wish to make, Judge, is that we set this

22     for a status date, and I will give you the

23     reasons, Judge.

24                    First of all, I would like

**V.    Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

A.) Issue a conclusive and declatory judgement, that the conduct, practice, and continuous violations described in this complaint, violate United States and Illinois Constitutions. B.) Award punitive, compensatory, emotional and mental damages, against the defendants responsible, in their official or un-official capacity, to the Plaintiff, in an amount to be determined according to proof. C.) Grant any additional relief the Court deems just and proper.

**VI.**    The plaintiff demands that the case be tried by a jury.    ☑ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _O7_ day of _May_, 20 _08_

_[signature]_
(Signature of plaintiff or plaintiffs)

Javier Bailey
(Print name)

K-52482
(I.D. Number)

R.R.#2  P.O. Box 31
Sumner Il. 62466

(Address)

8

Revised 5/2007